17696

Luther Boyd STEPHENS, Respondent, v. Mrs. Kathleen M. COTTINGHAM, Graham Cottingham and Carolina Casualty Insurance Company, of whom Carolina Casualty Insurance Company is, Appellant.

(115 S. E. (2d) 505)

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Appellant,*

*Messrs. W. B. Hawkins* and *Marion H. Kinon,* of Dillon, *for Respondent,*

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Appellant, in Reply.*

August 8, 1960.

OXNER, Justice.

This action was brought by Luther Boyd Stephens on a policy of insurance issued by the Carolina Casualty Insurance Company to Graham Cottingham, wherein the Company agreed to pay, on behalf of the insured and within specified limits, all sums which the insured should become legally obligated to pay as damages because of personal injury or death of any person, or damage to property, caused by accident and arising out of the ownership, maintenance or use of three tractors and two trailers named in the policy. Both Graham Cottingham and his wife, Kathleen Cottingham, were joined as codefendants with the Insurance Company but they have no real interest in this controversy.

Early in the afternoon of December 8, 1956, while said policy was in full force and effect, Luther Boyd Stephens,

respondent on this appeal, sustained personal injuries and property damage as a result of a collision between an automobile owned and driven by him and a 1955 Chevrolet tractor owned by Graham Cottingham and driven by one of his employees. This was one of the tractors named in the policy. On March 8, 1957, Stephens brought an action against Mrs. Kathleen Cottingham and Graham Cottingham to recover damages sustained by him as a result of said collision. The defendants requested the Insurance Company to defend said action but it declined to do so on the ground that there was no coverage. They then employed their own counsel and the case was tried in May, 1958, resulting in a verdict against Graham Cottingham alone for the sum of $6,-000.00 which was duly entered in the office of the Clerk of Court for Dillon County.

Having been unsuccessful in collecting said judgment from Graham Cottingham, Stephens brought this action to recover against the Insurance Company the amount of said judgment with interest and costs. The Company denied liability and claimed that coverage was excluded under two provisions in the policy, both of which were set up as affirmative defenses.

The first affirmative defense was that at the time of the accident all three tractors named in the policy were being operated in the business of Graham Cottingham rendering the policy null and void under the following indorsement: "In consideration of the reduced premium charged under this policy, it is hereby understood and agreed that coverage under this policy shall be null and void in the event that more than Two (2) of the tractors covered are operated at any one time since One (1) of the tractors covered is a Spare to be operated only when one of the other tractors is out of service due to mechanical breakdown, repair, or overhaul."

As a second affirmative defense it was alleged that at the time of the accident there was attached to the Chevrolet tractor an uninsured trailer, thereby suspending coverage under a provision in the policy that it would not apply when the

vehicle was "used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the Company."

On the trial of the instant action, the Insurance Company offered no testimony. That of the plaintiff disclosed the following:

Cottingham, who with his wife resided about two miles from Dillon, South Carolina, was engaged in the business of buying and selling livestock. He owned a GMC tractor, a White tractor and a Chevrolet tractor, all three of which were used in his business and insured under the policy. On the afternoon of the accident, one of these tractors with a trailer attached was on its way to Baltimore and the other, with a trailer, returning home from Baltimore. The motor on one of them, apparently the one returning from Baltimore, was giving some trouble. Cottingham intended to stop this tractor at Lumberton, North Carolina to have the motor repaired and replace it with the Chevrolet tractor which had been standing in his yard. With that in view, he directed one of his employees to take the Chevrolet tractor, to which was attached an empty trailer, to Dillon to have it greased and the oil changed. Just as the Chevrolet tractor was being driven from the driveway into the highway, the collision with the automobile of Stephens occurred. At the time of the accident the tractor with the defective motor had not reached Lumberton. The testimony does not disclose exactly where it was enroute but it is undisputed that both the GMC and the White tractors were then being used in the business of the insured.

At the conclusion of the testimony, each party made a motion for a directed verdict. It was agreed between counsel that there was no issue of fact for consideration by the jury and that the question presented was solely one of law as to the proper construction of the policy. Accordingly, the jury was dismissed and the case taken under advisement by the trial Judge who later awarded judgment in favor of Stephens against the Insurance Company for the amount of

the judgment which he had obtained against Cottingham, together with interest and costs. In this order he held that the indorsement on the policy to the effect that it should be null and void "in the event that more than two of the tractors covered are operated at any one time" should be construed as meaning "that the insured would have to be using simultaneously all three tractors in his business for profit as a truck-man", and "that sending an unloaded tractor to a local filling station to be serviced" would not constitute "an operation under the exclusion clause of the policy" with reference to the provision in the policy suspending coverage when a tractor was being used "for the towing of any trailer owned and hired by the insured and not covered by like insurance in the Company", he concluded that the fact that the Chevrolet tractor had attached an uninsured trailer had no causal connection with the accident, since the collision was with the front of the tractor as it moved into the highway and the attached trailer had never left the driveway of Cottingham's home. It was the view of the Court below that such causal connection must be shown to suspend coverage under this provision.

We need only discuss the provision that the policy shall be null and void in the event more than two of the tractors covered are operated at any one time. Under the well settled rule, this provision must be construed liberally in favor of the insured and any doubt or uncertainty as to its meaning must be resolved in his favor, but, of course, the courts are not at liberty to create an ambiguity where none exists or to change the plain and ordinary meaning of the language used. *Inman v. Life Ins. Co. of Virginia,* 223 S. C. 98, 74 S. E. (2d) 423; *Chastain v. United Insurance Co.,* 230 S. C. 465, 96 S. E. (2d) 464.

We do not agree with the Court below that this provision, liberally construed in favor of insured, applies only when all three tractors are being used at one time in insured's business. No such limitation is contained in this indorsement, nor may one be reasonably inferred. It

seems to us that the clear intent was to exclude coverage when all three pieces of equipment were exposed at the same time to the hazard of an accident. A risk of liability exists whenever a tractor is in operation regardless of the purpose for which it is used. It is stated in appellant's brief that by restricting coverage in this manner, the insured was enabled to reduce his premium by approximately $650.00. The accuracy of the estimation is not material, for at least some reduction was made as evidenced by the recital that the endorsement was "in consideration of the reduced premium charged under this policy." Respondent says that if the insured were only covered when not more than two tractors were in operation, he received nothing for paying a premium on a third and the same protection could have been procured by insuring only two. We do not agree. Under this indorsement he had an *insured* tractor which could be used as a spare when he took one of the other two out of service.

Under the construction we have given this provision, it is quite clear that there was no coverage on the Chevrolet tractor when it collided with respondent's car. At the same time this tractor was in operation, another was enroute to Baltimore and the third returning from Baltimore. It is argued in respondent's brief that appellant failed to prove that the returning tractor was in operation, stating that it might have reached Lumberton prior to the time of the accident. But insured's own testimony is to the contrary. He said that when the accident occurred, one tractor "was on its way to Baltimore and the other on its way back," and that as to the returning tractor with the bad motor, he *"was going* to put it in the shop" and replace it with the Chevrolet tractor. This clearly indicates that at the time of the accident the returning tractor was not "out of service due to mechanical breakdown, repair, or overhaul."

It is true that when the accident happened, one of the other tractors may at that moment have stopped at a service station for gasoline or the driver may have stopped somewhere for lunch. But we think the tractor

continued to be operated within the meaning of the policy during such temporary interruption of the trip. Appellant was not required to show that at the moment of the accident all three trucks were in a state of motion.

In *Commonwealth v. Henry,* 229 Mass. 19, 118 N. E. 224, 225, L. R. A. 1918B, 827, the Court, in construing a statute providing a penalty for operating an automobile on a public street between certain hours without lights, the facts showing that the automobile in question had been left standing unattended on a highway by the defendant, said: "The word 'operated' is not, as the defendant contends, limited to a state of motion produced by the mechanism of the car, but includes at least ordinary stops upon the highway, and such stops are to be regarded as fairly incidental to its operation." In *Stroud v. Water Commissioners,* 90 Conn. 412, 97 A. 336, the plaintiff sued to recover damages to his automobile which he had left unattended against the curbing on a highway. The Court found that the automobile was being "operated" at the time of the accident, but that under a statute no recovery could be had by the plaintiff for any damage sustained by reason of such operation, as it appeared that such automobile was not legally registered. In construing this statute, the Court used the following language: "The word 'operation' cannot be limited, as the plaintiff claims it should be, to a state of motion controlled by the mechanism of the car. * * * The word 'operation,' therefore, must include such stops as motor vehicles ordinarily make in the course of their operation." Also, see *Maher v. Concannon,* 56 R. I. 395, 185 A. 907.

Having concluded that the Chevrolet tractor was not covered by the policy when it collided with respondent's car because the other two tractors named in the policy were then in operation, it is unnecessary to determine whether coverage was suspended because this Chevrolet tractor had attached an uninsured trailer.

The judgment of the Court below is reversed and the case is remanded for judgment in favor of appellant under Rule 27.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.