Alfred **MELCHERT**, Appellant,

v.

Jonathan **MELCHERT**, Lillian Jacobson, Respondents.

No. C0–94–185.

Court of Appeals of Minnesota.

July 19, 1994.

Review Denied Sept. 16, 1994.

Ronald H. Schneider, Schneider, Johnson & Barron, Willmar, for appellant.

Ronald C. Anderson, L. Wayne Larson, Hulstrand, Anderson, Larson & Hanson, Willmar, for respondents.

Considered and decided by RANDALL, P.J., NORTON and KLAPHAKE, JJ.

## OPINION

NORTON, Judge.

Appellant Alfred Melchert sued respondents Jonathan Melchert and Lillian Jacobson for injuries Alfred sustained in a farm accident. Austin Mutual Insurance Company was allowed to intervene.

The district court granted Jacobson's motion for summary judgment. Alfred's claim against Jonathan and Austin Mutual's claim in intervention were later adjudicated, and Alfred has appealed the grant of summary judgment in favor of Jacobson. We reverse and remand.

## FACTS

Appellant Alfred Melchert and his son, defendant Jonathan Melchert, are farmers. Near the end of July 1989, Jonathan cut hay on his farm and asked his father to help him bale the hay. Alfred borrowed a pickup truck from Lillian Jacobson and brought a trailer owned by Alfred and his son-in-law's family.

In addition to Jonathan and Alfred, Jonathan's friend, Troy Cook, assisted with the hay baling. One person drove the baler, which towed a hay wagon. The baler tossed bales of hay into the hay wagon. Jacobson's

pickup truck was used to tow loaded hay wagons from the baler to a shed on Jonathan's farm where he stored hay. Once there, one person would throw bales of hay out of the hay wagon while another stacked the bales. Meanwhile, another hay wagon would have been attached to the baler so that the baler could continue to operate.

The night before the accident happened, Jonathan had cut and baled hay that was too wet to store. A hay wagon with the wet bales in it was sitting in the yard near the hay storage shed. Alfred's trailer was parked nearby. Jonathan gave Alfred the wet hay to take home so that it would be used and not spoil. At the end of the day, Alfred, Jonathan and Troy Cook began to transfer the wet bales from the hay wagon to the trailer. Troy Cook backed Jacobson's pickup truck to the trailer Alfred had brought and hitched the trailer to the truck. Alfred then got onto the trailer and knelt down to wind up the jack on which the trailer tongue had been resting before it was attached to the pickup truck.

While Alfred was winding up the jack, Jonathan began tossing bales of hay from the hay wagon onto the trailer. One of the bales of hay struck and injured Alfred.

Alfred sued Jonathan and Jacobson. For his claim against Jacobson, Alfred alleged that he had been injured while Jacobson's truck was being used, with Jacobson's permission, in the hay bailing and loading operation. Jacobson moved for summary judgment, asserting that the only basis for holding her liable would be Minn.Stat. § 170.54 (1988), the Safety Responsibility Act. Jacobson then argued that there had been no showing that the pickup truck was being "operated" at the time Alfred was injured, as required by section 170.54. The district court granted Jacobson's motion for summary judgment, holding Alfred's injuries did not arise out of the maintenance or use of the truck.

## ISSUE

Did the district court err in holding that Jacobson could not be held liable for Alfred's injuries under the Safety Responsibility Act?

## ANALYSIS

### *Standard of Review*

■■■ The parties do not dispute the relevant facts of this case. At issue is whether Alfred's injuries were caused by the operation of Jacobson's truck. This issue requires interpretation of the Safety Responsibility Act. Statutory interpretation presents a question of law that is reviewed de novo on appeal. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

### *Operation*

The Safety Responsibility Act provides:

Whenever any motor vehicle shall be *operated* within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof.

Minn.Stat. § 170.54 (1988) (emphasis added). The district court treated the issue presented as whether Alfred's injuries arose out of the maintenance or use of a motor vehicle. Maintenance or use is the test applied under the No-Fault Act. *See* Minn.Stat. § 65B.43, subd. 3 (1988). The Safety Responsibility Act, however, requires operation, not maintenance or use. Operating a motor vehicle is not the same as using a motor vehicle. *West Bend Mut. Ins. Co. v. Milwaukee Mut. Ins. Co.*, 384 N.W.2d 877, 879 (Minn.1986). Because the facts are not in dispute, we can independently determine whether Jacobson's truck was being operated. Operation of a motor vehicle implies physical control over the vehicle. *Id.*

Several cases have considered the issue of whether a person was "operating" a truck while loading the truck. *See, e.g., Glens Falls Ins. Co. v. Consolidated Freightways*, 242 Cal.App.2d 774, 51 Cal.Rptr. 789, 797 (1966); *Lukaszewicz v. Concrete Research, Inc.*, 43 Wis.2d 335, 168 N.W.2d 581, 586 (1969). In *Glens Falls*, 51 Cal.Rptr. at 791, an employee of a common carrier drove a truck owned by his employer to the Basalt Rock Company to pick up concrete beams.

During the loading operation, the employee was injured, allegedly by an employee of Basalt who was driving a forklift. The California Court of Appeals held that, although the Basalt employee was "using" the truck while engaged in loading it, he was not "operating" the truck; as the court stated, "loading a truck is not operating it, as any teamster knows." *Id.* at 797.

The Wisconsin Supreme Court, on similar facts, reached a different conclusion in *Lukaszewicz*, 168 N.W.2d at 586. In that case, an employee of a trucking company went to Concrete Research, Inc. to obtain a load of concrete products. While loading concrete slabs, a Concrete Research employee injured the trucker. The court held that loading and unloading was part of the "operation" of the truck. *Id.* The court stated,

> [o]perating a truck for loading and unloading must mean more than driving the truck to the premises. One cannot drive a truck while it is being loaded or unloaded. We think the word "operating" in the statute in connection with loading and unloading of an automobile means participating in the loading and unloading activity.

*Id.* The *Lukaszewicz* court declined to follow *Glens Falls*. *Id.*

■ We agree with the *Lukaszewicz* court that the entire range of activities inherent in the loading and unloading process must be considered to determine whether a vehicle was being operated. Operation includes participation in loading and unloading activities.

■ A person need not be inside a vehicle to operate the vehicle. *See Vesely v. Prestige Cas. Co.*, 4 Ill.App.3d 726, 281 N.E.2d 724, 725 (1972). In *Vesely*, a car's driver stopped the car, left the engine running, and went into a store to buy liquor. The *Vesely* court held that the driver's conduct was "in substance a continued operation of the car." *Id.* Similarly, we believe there was continuing operation of Jacobson's truck in the present case. The Melcherts used the truck to tow Alfred's trailer to Jonathan's farm, to rake hay, and to tow hay wagons. At the end of the day, they hitched Alfred's trailer to Jacobson's truck to take a trailer-load of hay to Alfred's farm. At the time Alfred was injured, the operation of the truck was continuing.

■ Jacobson argues that at most the trailer, but not the pickup truck, was being operated when Alfred was injured. This narrow focus is inappropriate. The trailer and the pickup truck were being operated as a unit. *See National Indem. Co. v. Ness*, 457 N.W.2d 755, 759 (Minn.App.1990), *pet. for rev. denied* (Minn. Sept. 14, 1990). Alfred was involved in the loading operation when he raised the jack after the truck and trailer were hitched together. Operation of the truck was ongoing and included loading the trailer attached to the truck. When we view the loading operation as a whole, we discern that the pickup truck was being operated at the time Alfred was injured. Whether that operation caused Alfred's injuries is for a finder of fact to determine.

### DECISION

Although the district court erroneously treated the issue as a maintenance or use question, our independent application of the law to the undisputed facts convinces us that Jacobson's pickup truck was being operated as part of the loading and unloading operation when Alfred was injured. Summary judgment was improper.

**Reversed and remanded.**